This is a suit instituted by Joseph A. Portier on behalf of himself and for the use and benefit of his minor daughter, Verina, for injuries sustained by the daughter in a collision between an automobile in which she was riding as a guest and a truck owned by defendant. Subsequent to the trial of the suit, but prior to rendition of judgment, the minor daughter, Verina Portier, attained the age of majority and was made party plaintiff in her own right. The father claims the sum of $77.50 for medical and other expenses incurred by him incidental to the personal injuries sustained in the accident by his daughter, and the daughter claims the sum of $4,800 for said personal injuries.
The accident took place on October 2, 1939, at about the hour of 7 P.M. on a gravel road between Houma and Montegut, in the Parish of Terrebonne, on or near a bridge known as "Willis Pellegrin Bridge". The gravel road has a bed of some 24 feet and the bridge is of the same width. The car in which plaintiff Verina was riding as a guest was traveling towards Montegut, while the truck of defendant was traveling in the opposite direction. It appears that the road curves some 400 feet from the bridge in the direction of Montegut, and there is also a curve on the Houma side of the bridge at about the same distance; in other words, the bridge is about in the center of an 800-foot straight stretch of road between the two curves.
Plaintiff was riding on the left-hand side of the rear seat of the automobile with two young boys next to her. The driver of the car occupied the front seat with another guest, a young lady. The collision occurred just as the automobile in which plaintiff was riding was completing the crossing of the bridge.
The plaintiff alleges that the driver of the automobile was driving to the extreme right-hand side of the road and was keeping a proper lookout, and that the accident was caused solely by the fault and negligence of the truck driver, operating defendant's truck in the course of his employment by defendant, in the following particulars: That the accident was caused solely by the fault and negligence of defendant's truck driver operating defendant's truck in the scope of his employment at an excessive speed; failing to keep the truck to the right of the road; failing to have proper lighting facilities and warning signals and flags on all protrusions of the truck; permitting the crossbeams on the truck or trailer to extend 2 or 3 feet; failing to keep a proper lookout and to make an effort to avoid the accident.
Defendant answered, denying the fault or negligence charged to his truck driver and averring that the accident resulted entirely from the negligence, carelessness and want of skill of the driver of the automobile in which plaintiff, Verina Portier, was a guest, in the following particulars: Want of skill of the driver of the automobile in *Page 297 
which plaintiff was a guest, in operating his automobile at an excessive speed; in failing to keep the automobile to the right and in failing to keep a proper lookout and making no effort to avoid the collision.
Upon these issues the case was tried and resulted in a judgment for the defendant, dismissing plaintiffs' suit. Plaintiffs have appealed.
The case presents purely the question of fact as to the cause or causes of the collision, and the trial judge, in a lengthy opinion, in which he thoroughly analyses the pleadings and the evidence, opens his discussion of the evidence with the statement:
"As usual there is a sharp conflict in the versions of the two drivers.
"Each testifies that his vehicle was traveling more than a safe distance from the road center and on its proper (right-hand) side, a state of fact, of course, which cannot be true as to both of them."
Since the two vehicles collided, the statement is obviously true, unless plaintiff's contention is correct to the effect that defendant's truck was equipped with crossbeams or timbers extending several feet from the body of the truck or trailer, and that one of those crossbeams extending some 3 feet beyond the sides of the truck hit the car in which plaintiff was a guest.
With reference to that question, the preponderance of the evidence shows that the point of contact on the truck was on the truck's beam; but we cannot find from the evidence that the trial judge erred in his conclusion that this beam was of a width of but 8 feet and did not extend more than 6 inches on either side of the truck or trailer. The trial judge seems to be of the opinion that this beam was so fastened by bolts that the same followed the cab and truck. It is our understanding from the evidence that it is a part of the truck and not of the trailer. In any event, it appears to be clearly shown that the beam was installed properly and in accordance with the highway regulations, and we cannot say that the lower court erred in finding that it was not the cause of the accident.
Another serious contention of the plaintiff is that the truck did not have the required lighting facilities. But the only evidence in support of that contention, as set out by the trial judge, is the testimony of the driver of the car and some of its occupants, none of whom seemed to have been paying particular attention, to the effect that they saw no side lights on the truck and trailer, whereas the truck driver makes the affirmative assertion that he did have all required lights; and that, using the language of the trial judge, "Though these witnesses negative having noticed side lights on the approaching vehicle, their failure so to do — bearing in mind their absence of aroused or alert interest — is scarcely sufficient to nullify the affirmative assertion of the truck driver." We fail to find error in the trial judge's conclusion that plaintiffs have failed to show by a preponderance of evidence that the truck did not have the proper and required lighting facilities.
The trial court calls attention to the fact the defendant's truck driver testified that the automobile in which plaintiff was riding had only one headlight burning, and that this testimony is uncontradicted.
Plaintiff's allegation that defendant's truck was being operated at an excessive speed is not sustained by the evidence. The strongest testimony on that question is that of the truck driver himself, who states that he was driving at about 35 miles per hour, and the testimony of the truck owner showing that the particular truck could not be run at more than 45 miles per hour. These witnesses, of course, are directly interested in the case, but they are in a better position to testify with reference to the speed of the truck than plaintiff and his witnesses. Plaintiff and some of the occupants of his car estimated the speed of the truck at more than 50 miles per hour, but, as stated before, none of them appears to have been paying any particular attention to the approaching truck. They were all young people on their way to a fair and dance at Montegut, and appear to have been engrossed in talking, laughing and singing at the time that the truck approached them. Under the circumstances, it is difficult to give much weight to their estimate of the truck's speed. We find, also, the testimony of Mr. Ellender, who states that a truck, which he did not recognize, passed him at some distance from the scene of the accident and shortly prior to the accident, traveling at a speed of about 50 miles per hour. The trial judge was not impressed by that testimony, and neither are we, since Mr. Ellender appears to have been guessing as to both his own speed and the speed of the passing truck, estimating the latter largely by comparison with the former. The trial judge also makes the *Page 298 
pertinent observation that it is customary to accelerate one's speed in passing another vehicle, and even admitting that the truck which passed Mr. Ellender was defendant's truck (which is not proved) and was traveling 50 miles per hour at the time of crossing Mr. Ellender, that testimony only remotely indicates the truck's speed at the time of the accident. The fact that the truck did not travel more than 70 feet after the collision is a further indication that it was not traveling at an excessive rate of speed. It is our opinion that the preponderance of the evidence supports Judge Butler's conclusions that both drivers were driving at reasonable speeds, considering the character of the road, the time, and the weather conditions then prevailing.
It is shown by the evidence that the defendant voluntarily furnished medical and hospital treatment, including the examination of Miss Portier's eyes and the furnishing of glasses for her, and it is the contention of plaintiff that this constitutes an admission of liability. We agree with the lower court that plaintiffs' contention is not well founded, since it is clearly shown that defendant never, at any time, admitted that his truck or driver was at fault, and it appears that the assistance made available by him was in no sense prompted by a feeling of legal responsibility.
Judge Butler, in his final analysis of the case, came to the conclusion that the question of actual fault or responsibility rested upon Belanger, the driver of the automobile, and absolved the truck driver from any negligence. Both drivers contended that they were driving on their extreme right-hand side. Judge Butler states, "It follows that one of them is in error. The burden of proof rests upon plaintiff. The proof, or evidence, when considered as a whole, does not convince the court that the accident occurred because of the fault of the truck or the negligence of its driver. * * * In the opinion of the Court, the theory of the truck driver that the Belanger car swerved into the trailer is more persuasive than the opposite theory that the truck and trailer were improperly lighted and equipped with an illegal and excessively long bolster, as tendered by the plaintiff."
We agree with the conclusion of the trial judge to the effect that plaintiffs have failed to prove to a legal certainty that the truck or truck driver was responsible for the accident, and we must therefore affirm the judgment. It is so ordered. *Page 439