GLADNEY, Judge.
Herbert Lowrey and Charlie Traylor, defendant owner and defendant driver of a Chevrolet automobile, are sued herein through a tort action for monetary damages which were allegedly caused when, during the night of May 29, 1952, the automobile rah into the rear of a tractor owned by Andrew Johnson and J. D. Olds and driven by Fred Jenkins, the accident occurring on the Homer-Lisbon highway about two miles east of Homer.
■ After trial -there was judgment awarding plaintiffs the sum of $791.10, but only against the defendant Traylor, the court a quo rejecting plaintiffs’ claim against *213 Uowrey ■ and also dismissing ■ the- latter’s ■demand in reconvention.
The facts giving rise to this litigation are comparatively simple and are not seriously disputed. On the above date after cutting and harvesting oats until after dark on Lowrey’s farm- east of Lisbon, Johnson instructed Jenkins to drive the tractor to Homer and he, Johnson, went ahead in his Jeep. The departure of the tractor from the Lowrey farm was observed by Traylor who noticed, according to his testimony, that there were two front lights and one rear light, all white, burning brightly upon the tractor. A short while after' the tractor left Lowrey asked Traylor, his colored share-cropper, to take Lowrey’s Chevrolet automobile and ’ go to the home of one Hemphill on the Lisbon-Homer highway and secure for him on credit a pint of whiskey. Traylor, on this journey, passed through Lisbon where he picked up R. C. Robinson and two children, all colored, and continued toward Hemphill’s residence west of Lisbon but some six miles east of Homer. Upon arriving there ■ and not finding.; anyone at home, Traylor drove the car in the direction of Hómer and was involved in the accident that brought on this suit.
Traylor, Robinson, Jenkins, T. R. Peterson and Billy Barnette were summoned as eyewitnesses to the accident. Traylor and Robinson both testified that just prior to the collision the automobile was traveling about 20 miles per hour, that they were blinded by an approaching car and by the rear white light of the tractor, which they assumed to be an on-coming automobile with one headlight. Jenkins said he was driving the tractor on the extreme right side of the highway at about 12 miles per hour when he was struck by Tráylor under circumstances which indicated the car was traveling at a high speed. Peterson and Barnette estimated the speed of the Chevrolet at SO to 60 miles per hour and that there was no automobile traveling eastward in the vicinity at the time of the collision.
Traylor is - charged with actionable negligence through his failure .to -keep a proper lookout and by driving at an excessive speed. Also it is alleged he was intoxicated at the time. We find the latter charge has not been substantiated. Johnson, Jenkihs and Sims, a state- patrolman, all closely examined Traylor at- the scene of the accident for evidente of drinking and none of these could- positively testify he was drunk. Likewise we find .the charge of excessive speed is not sufficiently proven. On the other hand we are convinced the proximate cause of the accident was the failure of Traylor to keep a proper lookout and that had he been doing this he would have seen thp tractor and not run into it. It was testified by Johnson and Jenkins the rear white light was slanted to cast its rays downward in order to facilitate work at night and that it did not reflect a blinding light. We believe this evidence reasonable and we accept it. The tractor was not equipped with a red light, but on that night, the testimony being that the atmosphere was clear, other than that the taillight blinded him, no reason is suggested by Traylor for not seeing the tractor and avoiding striking it. He must be held in legal contemplation to have seen that which he could and should have seen had he been keeping a proper lookout.
An alternative plea of contributory negligence has been pleaded as a bar .to any recovery by plaintiffs. This plea is based on a provision of the state motor vehi.de traffic 'statute, LSA-R.S. 32:296, requiring all vehicles traveling on the highways to be equipped with a red rear light visible for a distance of at least 500 feet. Whether or not this statutory provision was violated — it may be conceded it ‘ was — is of no ■ consequence because Traylor under existing circumstances should have observed the tractor and avoided the accident, but did not because he was not maintaining a proper lookout. This factor constituted the efficient intervening cause of the accident and fixes the blame.- That'the light- was white instead of *214 red can only constitute a remote, not a contributory cause and is insufficient to relieve the defendant Traylor of answering for his negligence. See Masaracchia v. Inter-City Express Lines, Inc., La.App.1935, 162 So. 221; Smith v. Monroe Grocer Co., Ltd., La.App.1938, 179 So. 495; Dowell Inc. v. Bayou State Oil Corp., La.App.1948, 33 So.2d 709; Portier v. Picou, La.App.1941, 3 So.2d 295.
In the trial court Lowrey successfully urged the defense Traylor was not acting within the scope of his authority. Traylor was not a regular employee of Lowrey but was engaged' by him as a half-hand or share-cropper upon the Lowrey farm. No regular remuneration .or wages were paid by Lowrey to Traylor other than as involved in the share-cropping arrangement. Lowrey testified that he had on occasions directed Traylor to drive his automobile upon certain missions and several of these had occurred on the particular day of the accident. But the record does not justify the inference Traylor was driving the automobile as Lowrey’s employee. Definitely he was not an employee, but rather he was a gratuitous bailee whose mission could be and was in the instant case limited by particular and special directions. There is no doubt of the fact that the origin of Traylor’s trip away from the Lowrey home was on a mission authorized by Lowrey. The testimony of both Lowrey and Traylor indicated this. Counsel for Lowrey urge, however, that the authorization was restricted to a journey to and return from Hemphill’s house for the sole purpose of securing a pint of whiskey upon credit. Lowrey testified that Tray-lor was directed to immediately return to the Lowrey farm.
Counsel for plaintiffs argue that when Traylor got to the home of Hemphill and discovered that no one was at home, he was faced with these alternatives: return to the defendant Lowrey’s farm without the whiskey after driving a number of miles in search thereof; remain at Hemp-hill’s house and await his' return, thereby incurring the possibility of arousing the suspicion of local peace officers and jeopardizing his entire mission to obtain whiskey; ride on down the road and return later to the Hemphills to get the whiskey; go elsewhere, as into the Town of Homer, to get the whiskey; or to go off on an independent mission of his own. It is argued that all except the last mentioned of the alternatives would have the effect of placing Traylor at the time of the accident within the scope of his employment.
The argument of counsel is not supported by proof. We do not infer from the record that after leaving Hemphill’s Traylor was proceeding to .secure whiskey elsewhere. The only relevant testimony indicates the contrary. Thus Herbert Lowrey testified:
“Q. On May 29, 1952, state whether or not you sent Charlie Traylor on a mission for you, what that mission was and where you instructed him to go. A. I sent him up to Mr. Hemp-hill’s. I told him to go up to Mr. Hemphill’s and gét me a pint of whis'key, and to tell Mr. Hemphill I would see him in. passing, 'and pay him for it.
“Q. Did you give him any.authority or instructions to, go to any other place other than Mr. Hemphill’s? A. I told him to go to Mr. Hemphill’s and come right back.
“Q. He used your automobile with your consent on this‘mission, did he not? A. Whenever I’d tell him.
“Q. On this- particular instance he was using your Chevrolet automobile, was he not? A. Yes, sir.
“Q. That was with your instructions? A. Yes, sir.
* * ■ * * * *
“Q. Where does Mr. Hemphill live with reference to the Homer-Lisbon Highway? A. He lives just about half way between Homer and Lisbon.
“Q. You know the scene of this accident, do you not? A. I do.
*215 ■ “Q. Where is that scene with reference to Mr. Hemphill’s residence, leading from Lisbon? A. It’s about four miles this side of Mr. Hemp-hill’s.
“Q. It is nearer Homer than Mr. Hemphill’s residence? A. I would-n’t think it would be over about two miles from here.
“Q. The collision occurred about two miles or two and a half miles from Homer, is that right? A. That’s right.
“Q. Then how far does Hemphill live from Homer, about? A. About six -miles.”
Charlie Traylor testified relative to his mission and the instructions given him by Mr. Lowrey:
“Q. Where were you going? A. I was going up to Mr. Hemphill’s.
“Q. Who sent you up there? A. Mr. Herbert.
“Q. ’ Did you see Mr. Hemphill ? A'. No, sir. He wasn’t'at home. So, when I got up there I see’d he wasn’t at home I just told the boy, I said We’ll drive on up the road a piece,'up there. I won’t be gone long.’
“Q. Drive on up the road? A. Yes, sir. ’
“Q. You mean toward Homer? A. Yes, sir; yes, sir, I was coming toward Homer.
“Q. Is that past Mr.’ Hemphill’s house? A. Yes, sir, I passed Mr. Hemphill’s house about four miles, I reckon, as near as I could come at it.
“Q. Did Mr. Lowrey send you to Homer? A. No, sir, he told me to come up to Mr. Hemphill’s and tell him to send him a pint of whiskey and he would see him in a few days passing.
“Q. Did he tell you to come to Homer? A. No, sir, he didn’t tell me to come to Homer.
“Q. How cómé you to come tp Homer? A. Oh, I was just foolin’ around. I had that bc& in there, me and him in there. I was just ridin’, I had the car off, had the chance to ride a little. I was just foolin’ around, haying, a good time.”
The foregoing testimony establishes conclusively, in our opinion, that Traylor’s mission was to proceed to Hemp-hill’s and return. When he .proceeded beyond Hemphill’s toward Homer he was on a personal. mission and was not acting within the scope .of his • authority. ■ LSA-Civil Code art. 2320; Warnick v. Louisiana Highway Commission, La.App.1941, 4 So.2d 607; G’Sell v. Cassagne, La.App. 1943, 12 So.2d 51.
In Kern v. Southport Mill, Ltd., 1932, 174 La. 432, 141 So. 19, at page 21, it was said:
“In determining, therefore, whether an accident ‘arose out of’ the employment, it is necessary to consider only this: (1) Was the employee then engaged albout his employer’s ’business and not merely pursuing his own ■ business or pleasure; ánd (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?”
H. B. Barret in his article “The Factor of Route in the Doctrine of Re-Entry in Louisiana”, 14 Tulane Law Review, pages 72-81, describes the elements necessary'to show the re-entry of employment by the driver at the commencement of a return journey as follows:
“L The trip must have had its origin in the employer’s business.
“2. The mental purpose of the employee, following departure from employment, must be to return to the next duty, whether that be further work, or the return of the vehicle to the place where it belongs. ■
*216 “3. The , purpose to return -must have been put into effect by ■ starting the return journey.”
Counsel for appellants cite several au-. thorities bearing upon the establishment of a prima facie showing of the émployer-employee relationship ánd that when such conditions have been met by the plaintiff a presumption of the relation arises and places - upon the defendant-owner the burden of showing the servant was not acting within the scope óf his - employment. In the instant case-it is definitely ■established that the origin of Traylor’s journey was authorized; He was acting, however, upon a mission for Lowrey as a gratuitous bailee and not as' an' employee. The distinction", however, -has no legal significance herein because of the attendant circumstances. The legal result would be the same whether Traylor [was an employee or a gratuitous bailee. The significant fact is that when Traylor reached Hemphill’s and was unable to fulfill the mission of his employer, his mission was over with the exception of the return journey to the Lowrey farm. ■ He was instructed to purchase the whiskey on-credit and was directed to proceed to Hemphill’s house and come, right back. Furthermore, the - testimony of .Traylor indicates clearly that he was proceeding upon a pleasure ride of his own with his friend, Robinson, having no relationship to the purpose of his mission.
In appellants’ brief is cited Griffin v. Yellow Cab Co. of Shreveport, Inc., La.App.1952, 61 So.2d 225, wherein this court held a cab driver did not deviate from his mission by taking a more circuitous route in returning to his employer’s place of business. It was pointed out in the opinion that the evidence did not indicate the driver had any intention of engagirig in the satisfaction of any personal purpose or indulging in any- purely private activity. The court pointed out, 61 So.2d at page 229:
“The mere fact that he was negotiating a route which, took him through a populous colored section of the City does not militate against the uncon-troverted claim that he was engaged at the time in the mission of returning the 'cab to his employer’s place of business.”
Traylor, by no range of the imagination, can be said to have contemplated returning ' to the Lowrey farm when he left the Hemphill place and proceeded in the direction of Homer. Homer was directly west of Hemphijl’s- place, whereas the Lowrey farm was ,to the east. The argument that Traylor was still on a. mission to secure whiskey for his boss is not substantiated by the evidence.
We have concluded, therefore, and in this • respect we are strengthened by the opinion of our brother of the trial court, that Traylor was not acting in the scope of his authority-when he left the house of Hemphill and proceeded toward Homer to the point where the accident occurred. Fro.m this finding it-follows plaintiffs’ demands against Lowrey were properly rejected.
No opposition is raised as to the District Court’s finding as to the quantum of damages, with which finding we are in accord.
From the foregoing reasons it follows that the judgment 'from which appealed should be and is hereby affirmed at appellants’ cost.
ÁYRES, J., is recused.