150 So. 9

JAMES et al. v. J. S. WILLIAMS &
SON, Inc.

No. 32327.

July 7, 1933.

Rehearing Denied Oct. 3, 1933.

Foster, Hall, Barret & Smith, of Shreveport, for applicants.

E. W. & P. N. Browne and Irion & Switzer, all of Shreveport, for respondent.

ODOM, Justice.

While on a street in the city of Shreveport, Neita James was struck and seriously injured by a motor vehicle belonging to the defendant. She sued for damages, alleging that the vehicle was at the time of the accident being operated by Roy Rhodes, an employee of defendant; that the said Rhodes was on a mission for his employer and acting within the course and scope of his employment; and that the accident and resulting injury were due solely to his fault and negligence.

These allegations were specifically denied by defendant in its answer.

The trial judge found and held that plaintiff was injured by defendant's motor vehicle while being operated by one of its employees, and that the injury was due to the driver's fault and negligence, but rejected plaintiff's demands on the ground that the driver was on a mission of his own at the time of the accident, and was not acting within the scope of his employment, and was not therefore the agent of the defendant. The case was carried to the Court of Appeal for the Second circuit. That court approved the ruling of the district court and affirmed the judgment. 143 So. 84.

■

■ 1. The law under which plaintiff seeks to hold defendant liable for her injury and damage is article 2320 of the Civil Code, which reads in part:

"Masters and Servants. Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

Learned counsel for plaintiff earnestly contend that Rhodes, defendant's employee, was, at the time of the accident, in the exercise of the functions in which he was employed. The facts found by both the district court and the Court of Appeal are that defendant owns and operates an undertaking establishment in Shreveport and, in the conduct of its business, uses an ambulance referred to as a "funeral car," which was kept in a garage at defendant's place of business. Roy Rhodes and a man named Jemison were employed as helpers in the establishment; Rhodes being employed as driver of the funeral car, which was used only in connection with defendant's business. At 5:30 p. m. on February 23, after the day's work was done, Jemison requested Rhodes to take him home in the funeral car. Rhodes did so, and while on his way back to the defendant's garage, where he intended to store the car for the night, he ran over plaintiff and injured her.

Rhodes was employed to drive the vehicle only when used in connection with defendant's business, and as directed by his employer. Defendant was not obligated to transport any of its employees to their homes from its place of business after their work for the day was done, nor to bring them back, and it was therefore no part of Rhodes' duty as employee to do so. Rhodes took the car and drove it on this occasion without the knowledge or consent, either express or implied, of his employer. When he took the car to carry Jemison home, he was clearly on a mission of his own connected in no way with his employment.

This is virtually conceded by counsel for plaintiff. But they contend that even if it be true that Rhodes used defendant's car without its knowledge or consent and on a mission in no sense connected with his employment in carrying Jemison to his home, yet while on his way back to the garage for the purpose of restoring the car to its usual place, he was, while returning, on a mission for his employer. The theory of this contention is that even though an employee takes and uses his employer's motor vehicle without authority and engages in an enterprise in no sense connected with his duties as an employee, yet, when his own private mission is at an end, he re-enters his employment and is engaged on a mission for his master the moment he turns and starts on his return trip for the purpose of restoring the car to the employer's premises.

Counsel for plaintiff in their brief say that Rhodes had no individual purpose to subserve in using the car, and that at the time of the accident his sole purpose in driving the car along the street where the accident took place was "to take it back to its proper place so that it would be ready for use by his employer."

■ Whether Rhodes took the car to subserve an "individual purpose" of his own, or whether he took and used it solely to accommodate Jemison, is not material. In either

event, he was not using it "in the exercise of the functions" for which he was employed, and therefore the relationship of master and servant, or employer and employee, was suspended while the car was being so used, and the doctrine of respondeat superior applies "only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong, at the time and in respect to the very transaction out of which the injury arose."

■ The mere fact that the person to whose negligent and wrongful act the injury and damage is attributable was in the general employment of another person "does not necessarily make the latter the master, and responsible for his acts. The master is the person in whose business he is engaged at the time and who has the right to control and direct his conduct." Berry on Automobiles (6th Ed.) Vol. 2, § 1315; Atkins v. Points, 148 La. 958, 88 So. 231, 232; Tinker v. Hirst, 162 La. 209, 110 So. 324.

■ Liability in cases of this kind depends, not upon the fact of ownership of the car and the general employment of the person who drives it and causes the injury, but upon whether the driver was, at the time of the injury, in the exercise of the functions for which he was employed, for it is only while in the exercise of those functions that the relationship of master and servant or principal and agent exists.

■■ An employee is the agent or servant of his employer only while engaged in doing for his employer something which he has been directed to do or some act which can be reasonably and fairly said to be a natural inci-

dent of the employment, or logically and naturally connected therewith. But when an employee turns entirely and wholly aside from the purposes for which he was employed and engages in some act or enterprise in no way connected with or incidental to his employment, the employer is not responsible for damages caused by the employee while so engaged.

■ The rule which prevails here and elsewhere is that "the owner of an automobile is not liable to one who is injured by the negligence of his chauffeur while operating the machine without his knowledge or permission, and for a purpose other then that for which he was employed, as where the driver is on errand personal to himself." Tinker v. Hirst, supra; 2 R. C. L. 1198, § 33.

■ "The reason for the rule is that, in order to render the owner liable for the acts of the servant, the relationship of master and servant must exist at the time of such acts, and such acts must be done by the servant within the scope of his employment."

See note to Hickson v. Walker Co., 68 A. L. R. 1051, supplementing note in 45 A. L. R. 478.

When Rhodes took defendant's car to carry Jemison home, he departed entirely from the scope of his employment. That being true, he did not re-enter his employment when he accomplished that mission and started on his return trip to the garage. The reason is that he did not start out on a mission for his employer; the mission or trip was unauthorized at its inception and it necessarily remained so throughout. When Rhodes turned aside to do something in no way connected with or incidental to his employment, the re-

lationship of master and servant was suspended and remained suspended so long as he was engaged in doing the unauthorized act.

It would be wholly illogical to hold that when a chauffeur takes his employer's automobile without authority and uses it for a mission of his own, his employer is not responsible for his negligent acts while on the outgoing trip, but is responsible for such acts while he is on his way back, because if the outgoing trip is unauthorized and beyond the scope of the employee's employment, the incoming trip is likewise so, being a continuation and part of the same unauthorized mission. An employee may suspend his contractual relations with his employer by temporarily departing from the scope of his employment and going on a mission of his own or for another, and, when he does, that relationship is suspended during the entire time he is on such mission, and not half the time.

If a chauffeur suspends his contractual relations with his employer by taking and using his employer's car for his own private purposes, as relates to the use of the car for the purpose taken, he is in law a stranger to the owner and his use of it is unlawful, as much so as if he were not employed by the owner in any capacity. It would hardly be contended that if a stranger went to a garage, took an automobile and used it for a joy ride, the owner of the car would be responsible for the negligent acts of the trespasser while on his way back to the garage for the purpose of restoring the car. Yet that would be as logical as to say that the owner is responsible for the negligent acts of his chauffeur who is returning from a wholly unauthorized mission.

We understand plaintiff's contention to be that even though an employee makes an unauthorized use of his employer's car, and thereby suspends the relationship of master and servant between himself and the owner, yet he owes to his master the duty of returning the car when he is through with it, and that because he owes that duty he is, while returning the car, on a mission for the master and the relationship of master and servant is resumed. That would be true if the duty to return the car grew out of or was incidental to the employment. A stranger, even a thief, owes to the owner of the car the natural, civil duty to return that which has been unlawfully taken away. There is both a moral and legal duty imposed upon every one to restore that which he has illegally taken from another, and this duty is in no sense dependent upon the relation of master and servant, or employer and employee.

Whether the owner of a vehicle is liable for the negligent acts of one who is returning it depends upon the character of the duty to return. If the duty arises from or is incidental to the contract of employment, the owner is responsible. Otherwise he is not.

"Although there is authority to the contrary, the mere fact that the chauffeur after having made an unauthorized use of his employer's vehicle for purposes of his own, is returning with it, does not, according to the generally accepted rule, re-instate him within the scope of his employment so as to render his employer liable for his acts, but he must have returned to the point of his departure from his duties, or to a point where in the performance of his duties he is required to be; in

other words, the relationship of master and servant is regarded as suspended during the entire time during which he employs the vehicle until he has returned it to its proper place." 42 Corpus Juris 1112, § 871.

See, also, 39 Corpus Juris 1298, § 1495.

Many cases are cited in support of this text, among them being Curry v. Bickley, 196 Iowa, 827, 195 N. W. 617, where the Supreme Court of Iowa held that if a chauffeur takes his employer's automobile without authority for purposes of his own, whether for business or pleasure, the employer is not liable for his negligent acts, whether going from or returning to the scene of his employment.

In a recent Missouri Case, Kaufman v. Baden Ice Cream Mfrs. (Mo. App.) 7 S.W.(2d) 298, 300, the court said:

"Tersely stated, as we understand the law, it is that, if the chauffeur uses the truck for his own use, then it remained so for the entire trip, whether going from defendant's plant or returning to it, unless the master's business is also served on such occasion."

Innumerable other cases might be cited in support of this view. Counsel for plaintiff concede that this rule prevails generally. But they say that a different rule prevails here, and they cite the cases of Black v. Rock Island A. & L. R. Co., 125 La. 101, 51 So. 82, 85, 26 L. R. A. (N. S.) 166; Cusimano v. A. S. Spiess Sales Co., 153 La. 551, 96 So. 118, 119; Glass v. Wise & McAlpin, 155 La. 477, 99 So. 409, 410, and Blashfield's Encyclopedia of Automobile Law, p. 1433.

The Black Case has no application, for the reason that the facts on which the holding in that case rests distinguish it from cases like the one at bar. In that case, the defendant was a railroad corporation having its domicile without the state. It placed all its equipment, including engines and cars, in custody and control of certain men, with full authority to operate them. These men took one of the engines and a flat car from the roundhouse at Winnfield for a "celebration," and while on the way back ran over a pedestrian. The engine and the car were not taken out by the employees on a mission for their employer. But the corporation was held liable on the ground that the employees were the sole custodians of the equipment and were the agents in Louisiana of the foreign corporation.

The court, in summing up its findings and conclusions, said that the corporation had clothed these agents with actual power to operate these equipments as they pleased, and that while operating them for their own amusement across a street of the town, were operating them within the scope of the authority conferred upon them, and:

"The right to operate a steam locomotive on, or across, a street in a town involves the use of an agency highly dangerous to life, limb, and property, and the responsibility for the exercise of such right cannot be shifted by the corporation in which it is vested to the person, who, by its authority, actually exercises it."

In Atkins v. Points, supra, where it was held that one who leased motorcars to chauffeurs, who paid him a stipulated sum per day for their use, was not liable to third persons for injuries caused by such chauffeurs because there was no relation of master and

servant which brought into operation the doctrine of respondeat superior, the court said:

"The case [the one under consideration] is to be distinguished from that of Black v. Railroad Co. * * * in that the persons in charge of the engine in that case were held to have been the agents of the railroad company at the time of the accident."

It is true that the court in the Black Case said that even if it were true that those in charge of the engines were rendering no service for which they were employed, "It can hardly be .denied that their duty to defendants *as custodians of the property* required that it should be returned to the place from which they had taken it." (Italics ours.)

This expression in the Black Case seems to have led to some confusion, as it has been interpreted to mean that if a servant takes his master's equipment out without authority, the master is responsible for injuries caused by the servant while returning it. In so far as it has been so interpreted, it is misunderstood. The theory upon which the holding in that case was based was that the servants were custodians of the engines with right to use them as they pleased, and, having such authority conferred upon them, they were actually the agents of their employers.

It must be noted that the court said the duty of the employees "to defendants as custodians of the property" required that it should be returned. The character of the *duty to return the equipment was that of* employees or servants as custodians.

In the Cusimano Case, the servant was sent out by the master to deliver goods, and, while out, turned aside on a mission of his own.

After completing his private mission, he turned back to resume his duties, and while on his way injured a third person. The court held that "when the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master."

This holding is in line with the rule which prevails generally, that "notwithstanding the chauffeur may previously have deviated from the owner's business, if at the time of the accident complained of he has resumed the owner's business and is acting within the line and scope of his employment the owner may be liable." 42 Corpus Juris 1112, § 871.

The difference between the Cusimano Case and the one at present under consideration is that in that case the servant was sent out on a mission for the master; he was acting within the scope of his employment while going out to deliver the goods; while out he *turned aside; but his duties as an employee* were resumed and he re-entered the employment when he turned back to resume his work. In the case at bar, the trip was unauthorized from its inception.

In the Glass Case, supra, also cited by counsel, it was found that the servant took the vehicle out without his employer's knowledge or consent to deliver meat to a friend. While traveling back in the direction of his employer's place of business, but before the meat was delivered, he injured a third person, who was not permitted to recover from the owner of the car.

Whether the owner of the car would have been held liable had the meat been delivered

and the private mission of the chauffeur thereby completed when the accident took place, was not an issue in the case, and was not decided. But the court, after quoting 18 R. C. L. 797, to the effect that "where a servant has made a temporary departure from the service of his master and the object of the departure has been accomplished and the servant re-engaged in the discharge of his duty, the responsibility of the master for the servant's acts immediately attaches," did say:

"There would seem, therefore, to be no doubt of defendant's liability if the mission of Mitchell [the chauffeur] to Jim Turner's [Mitchell's friend] had been completed and a connection with the business of defendant had been re-established at the time of the accident; and, in order to constitute a re-entry upon the business of the master under such circumstances, it was not essential for the servant to have reached the zone of his employment or the territory in which he was employed to make deliveries."

The author of the opinion then quotes from the Cusimano Case an excerpt to the effect that: "When the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master."

The court, in the Glass Case, did not intend to enlarge the doctrine announced in the Cusimano Case, which is in line with the rule followed in the other states, and is that where a servant is sent out by the master on a mission pertaining to his business, and, while out, the servant departs wholly from that mission and goes upon one of his own, the relationship of master and servant is tempora-

rily suspended during the performance of the servant's private mission; but when the servant turns and resumes the work which he was sent out to do, if that be nothing more than return the vehicle, he re-enters his master's employment, and the liability of the master for his torts reattaches.

The above quotation from the Glass Case, which seems to sanction the view urged by counsel for plaintiff, is not pertinent to the issue involved there, and is obiter dictum.

To hold that the owner is liable for the torts of his chauffeur while returning from a mission wholly his own and unauthorized, which mission was without the owner's knowledge or consent, would be contrary to the spirit and letter of article 2320 of the Civil Code, and would subject owners of motor vehicles to most unjust and dangerous hardships, such as were never contemplated by the framers of the Code. Such a doctrine has never been sanctioned either here or elsewhere.

It is contended by plaintiff that the court below should not have heard testimony on the question of Rhodes' authority to drive the car, as such defense was inconsistent with defendant's plea that plaintiff's injury was due to no fault of its own.

Defendant did not set up Rhodes' want of authority as a special defense. Plaintiff alleged in two separate paragraphs of her petition that Rhodes, while driving defendant's car and at the time the accident occurred, was acting within the scope of his employment. Defendant merely denied these and all other allegations of plaintiff's petition. Under the pleadings, defendant was not cut off

from introducing testimony showing that its employee while driving the car was acting beyond the scope of his employment.

May v. Yellow Cab Co., 164 La. 920, 114 So. 836, cited by plaintiff, is authority only on the proposition that when plaintiff alleges and proves that a defendant is the owner of the car, and that it was being operated at the time of the injury by one of its employees, he makes out a prima facie case which raises the presumption of authority, and that the burden is then upon the defendant to show lack of authority. We find no merit in plaintiff's contention on this point.

The judgment of the Court of Appeal, which approved the ruling of the district court, is correct, and is accordingly affirmed.

O'NIELL, C. J., dissents.