This is a suit for damages for personal injuries brought by a father for the use and benefit of his minor son, Clarence Braud, Jr., eleven years of age, who sustained a fracture of the right humerus as a result of the overturning of an automobile in which he was riding on the morning of August 11, 1939. The suit is directed against Paul Zeringue who was driving the car and also against John Vinet, Jr., the owner of the car and by whom Zeringue was employed. The demand as originally made was for the sum of $5,000 but in a supplemental petition the father alleged that he had been obliged to spend the sum of $28.50 in connection with having his son's injuries attended to and he asks that he recover that amount for himself, individually, in addition to the $5000 for the use and benefit of his minor son.
The Board of Administrators of the Charity Hospital of New Orleans, where the minor received medical attention, intervened in the suit and asked to be awarded judgment against the plaintiff and the defendants, in solido, in the sum of $109 for the treatment administered as well as for other services rendered during hospitalization, together with 10% attorney's fees and legal interest from date of judicial demand.
In his petition the plaintiff alleges that on the day his boy was injured he had been engaged with another minor named O.J. Blanchard, by the defendant Paul Zeringue, to assist in distributing circulars advertising a sale at the defendant Vinet's store in Thibodaux. He avers that Zeringue, who is an employee of Vinet drove the car in an area around Thibodaux and "then began a drive for the purpose of distributing more of said circulars in the neighborhood of Raceland, Louisiana." He sets out further that while proceeding on the highway following the right bank of Bayou Lafourche, on reaching a point about eight miles below Thibodaux, the automobile turned over because of the gross negligence and carelessness of Zeringue in driving it at the unlawful rate of speed of 60 miles per hour in a gradual curve on the concrete highway and apparently losing control over it as there were no vehicles meeting or overtaking him at the moment. Zeringue is sought to be held liable on the ground of his own negligence and Vinet as the owner of the car and the employer of Zeringue who, it is contended, was engaged in the course and scope of his employment at the time of the accident.
The defendants filed an exception of no cause of action which was overruled and then filed a joint answer in which they deny generally all the allegations of the petition and particularly deny that Clarence Braud, Jr., was ever employed by either of them. They aver further that although Zeringue was Vinet's employee he was acting beyond the scope of his authority at the time the accident happened as his specific instructions were to distribute the circulars only in the Town of Thibodaux.
Pleading in the alternative the defendants allege that should it be found that Zeringue was acting within the scope and authority of his employment, the proximate cause of the accident was not any negligence as alleged against him but that the same was due to the sudden locking of the front wheels of the automobile, and this because of a defect which he could not discover and that he acted as any reasonably prudent man would have done under the circumstances in making every attempt to avoid it.
After trial in the district court on the foregoing issues as thus presented to it, there was judgment in favor of the plaintiff against both defendants, in solido, in the sum of $350 for the use and benefit of his minor son and in the further sum of $28.05 on his own demand. The intervenor, Board of Administrators of the Charity Hospital, was awarded judgment for the full amount of its demand with 10% attorney's fees, the same to be paid by the defendants over and above the amount awarded to the plaintiff on behalf of his minor son. Both defendants have moved for and were granted orders for suspensive and devolutive appeals but only the defendant, John Vinet, Jr., perfected a suspensive appeal which plaintiff has answered asking for an increase in the amount of the award made on behalf of his minor son, to the sum of $5,000. The defendant Zeringue is not an appellant before this court and we are not concerned with the question of his liability. The vital issue that is before us is the liability, vel non, of the appellant Vinet under the doctrine of respondeat superior as it is only in the event he should be held liable under that rule must the question of Zeringue's negligence be considered and determined. *Page 202 
The facts as disclosed by the record show that Vinet operates a grocery and bar which is located on the highway between Thibodaux and Schriever, Louisiana, on the outskirts of Thibodaux. He frequently has special sales at his store which he advertises by distributing circulars in the City and the vicinity of Thibodaux. Paul Zeringue is employed by him as a clerk but he also has charge of distributing the sale circulars, for which purpose he is furnished an automobile by Vinet. A negro boy named O.J. Blanchard is also employed by Vinet as delivery boy but he also assists Zeringue in his work of distributing the sale circulars. He actually does the distributing whilst Zeringue drives the car.
On the day of the accident with which we are here concerned, it seems that the Blanchard boy who was friendly with the plaintiff's minor son, who is of the same race, either invited or solicited the latter to go with him and help in distributing the circulars. Zeringue says that he did not ask or employ this boy to go with him but the fact remains that he permitted him to accompany them and the boy did actually participate in the work at hand.
The testimony is rather indefinite regarding the specific territory that was generally covered in the advertising campaign but at the most it does not seem that it extended beyond Schriever to the west and the Coulon Plantation across Bayou Lafourche to the north. It of course included the limits of the Town of Thibodaux itself. There is however no evidence whatsoever found in the record to support or justify the suggestion arising out of one of the allegations of plaintiff's petition to the effect that the neighborhood of Raceland was included in the advertising territory.
The testimony regarding the exact route covered on the day of the accident is not certain but it may well be assumed from what appears, that the party had distributed circulars as far as Schriever, on Coulon Plantation and around the City of Thibodaux, for, it is with regard to what happened after they had reached the home of Mr. Harvey Peltier, which is situated on the public highway along Bayou Lafourche, south of the main part of the City of Thibodaux, that we are concerned in considering the liability of Vinet as Zeringue's employer.
The testimony indicates that at Mr. Peltier's home was the last place where circulars were to be distributed. Zeringue says that he never distributed any beyond that point and a statement made by the Braud boy himself leads to the belief that he also understood that that was where the distribution ended. It is shown that there was a batch of circulars still left in the automobile from which the inference is drawn that the task of distribution had not yet been completed but there is no proof on this point and even assuming that there were still more circulars to be distributed it would make no difference in the conclusion we have reached regarding Vinet's liability.
After they had finished distributing the circulars at the Peltier home what happened is undisputed. Zeringue told the boys that he was going to see his mother who, he hold them, as they seemed to already know, lived on the highway going to Raceland. The Braud boy seems to have understood that she lived at Raceland which is fifteen miles from Thibodaux and the fact is that she lived between the two towns, about eight miles south of Thibodaux. Before that, the boys had been riding on the outside of the car but when Zeringue told them about going to see his mother they got on the inside and the car started off. It was while on this trip at a point several miles below Thibodaux, and before they had reached Zeringue's mother's home that the accident happened and the boy was injured.
Under our law, Civil Code, Article 2320, an employer is answerable for the damage caused by his servants or employees when they are "in the exercise of the functions in which they are employed." That means of course that the damage for which the employer is sought to be held answerable must have been caused at a time during which the employee is engaged in his duties for his employer and while he is acting within the scope and in the course of his employment. Undoubtedly therefore had the injuries sustained by the Braud boy in this case arisen out of an accident caused by Zeringue's negligence while they were in the act of distributing the circulars in any part of the territory covered in his employer's advertising campaign, the latter would have been answerable in damages. But it is a rule well established by jurisprudence that even though the employee may not have finished the task he was engaged in or may not yet have returned to the base from which *Page 203 
the task began, if during the course of the performance of the task he deviates momentarily to go on some mission of his own or to do something that is not connected with his work, and it is during the course of such deviation that through his fault damage is caused to someone, he will be held to have been outside of and beyond the course and scope of his employment and his employer is not answerable. It is of course also well established that the rule of deviation is qualified by the further rule of re-entry, which means that when, after having deviated therefrom, the employee resumes the work he was engaged in, he then re-enters the course and scope of his employment and the employer is to be held accordingly. This period of re-entry extends to the return of the employer's vehicle which the employee uses in his work, to the place where it belongs.
We had these questions for consideration in the recent case of Warnick v. Louisiana Highway Commission, 4 So.2d 607, in which they were treated somewhat at length. We there quoted approvingly from an article published in 14 Tulane Law Review page 72, to the effect that in order for it to appear that a re-entry has taken place, three elements must be present: (1) The trip on which the employee is engaged must have had its origin in the employer's business, (2) The mental purpose of the employee following the deviation must be to return to his next duty whether it be to continue his work or to return the vehicle he is using to the place where it belongs and (3) The purpose to return must have been put into effect by starting his return journey.
In the Warnick case we found that all three elements appeared and the employer was held answerable in damages. In the present case however, under the facts presented, it is clear that even though the first of the two elements were present, the third was not. When Zeringue left his employer's store to go to distribute the sale circulars, that made the trip have its origin in the employer's business and produced the first element. When he left the Peltier home for the express purpose, as stated by him to the two boys, and as they admit, of going eight miles away from the scene of his work, to visit his mother, he deviated from his employment and as he no doubt intended to return the automobile to the store of his employer, the second element was presented. But it was on his way to his mother's home, before he was able to accomplish the purpose for which he had deviated from his work, that the accident happened, thus making it impossible to put into effect his purpose to return and impossible too for the third element to be presented. We therefore conclude that at the time the accident happened, Zeringue was not "in the exercise of the functions for which he was employed," he was not acting within the course and in the scope of his employment, and therefore Vinet, his employer, is not answerable for the damage occasioned thereby.
The district judge we believe laid too much stress on Zeringue's control over the automobile and the authority with regard to its use, as given him by his employer. Such control or authority as he had thus derived did not have the effect of extending the scope of his employment to the point where his employer could be held for his conduct and actions while driving the car purely on a mission of his own and altogether disassociated from the business for which he had been given use of the automobile.
The conclusion we have reached leads to a reversal of the judgment appealed from in so far as it condemned the defendant Vinet and as his co-defendant Zeringue has not perfected his appeal, the judgment against him will stand affirmed.
For the reasons stated it is ordered that the judgment appealed from, in so far as it condemns the defendant Vinet be and the same is hereby reversed, annulled and set aside and otherwise, it is affirmed. *Page 204