Plaintiff brings this suit to recover damages for injuries sustained as the result of a collision between a truck in which plaintiff and a number of other persons, who are plaintiffs in companion cases, were riding, and a car owned and driven by one James Russell, a salesman employed by the De Soto Wholesale Grocery Company, Inc.
Most of the facts are undisputed and may be briefly summarized as follows:
Russell, employed as a salesman by the De Soto Wholesale Grocery Company, Inc., recklessly driving his personally-owned automobile at about 7:30 o'clock P.M. on September 11, 1941, negligently drove his said car into a pick-up truck driven by J.W. Middleton, in which plaintiff and several other persons, who are parties plaintiff in companion suits, were riding. The accident took place about a quarter of a mile south of the town of Stonewall, in De Soto Parish, Louisiana, on the Jefferson Highway, commonly known in the vicinity as the Mansfield Road. Both vehicles were proceeding south on said highway, and Russell's car crashed into the rear of the truck, causing the injuries for which redress is sought.
There is no dispute as to the negligence of Russell, and the only point before the Court is whether at the time of the accident Russell was acting in the course and scope of his employment, so fixing liability upon his employer, the De Soto Wholesale Grocery Company, Inc.
After trial, judgment was rendered on the 7th day of May, 1943, by the District Court, rejecting plaintiff's demands, from which judgment this appeal is prosecuted.
On the day of the accident, which was a Thursday, Russell had worked his regular route, calling on merchants in and about the vicinity of Spring Ridge, Bethany, Latex and Waskom. Having made his last business call of the day at Waskom, Texas, about 6:00 o'clock, P.M., Russell testified that he drove to Shreveport on personal business; that he went to the Caddo Hotel to call on a Mr. Doris, who was connected with the Southern Cotton Oil Company, with a view of discussing prospective employment. Mr. Doris being out, Russell left the Caddo Hotel at about 6:30, drove out the Jefferson Highway and stopped at Kolb's Bar, about eleven miles out of Shreveport. At this point he met a Mr. C.S. Crouch, who also was in the employ of the De Soto Wholesale Grocery Company as a salesman, and after some conversation and a drink of beer, Russell accepted Crouch's invitation to have supper with him at Mansfield, where Mr. Crouch lived. Thereupon, both Crouch and Russell left Kolb's Bar and started down the highway in their respective cars in the direction of Mansfield. Russell, evidently driving at an excessive rate of speed, passed Crouch and, shortly after passing Stonewall, crashed into the rear of the truck in the manner set forth. *Page 741 
It is the contention of plaintiff that Russell, having completed his day's work for his employer at Waskom, deviated from the course and scope of his employment by making the trip to Shreveport; that this deviation ceased and he re-entered his employer's business at the time that he drove his car into the Mansfield Road after leaving Shreveport. It is further contended that the incident at Kolb's Bar, the acceptance of an invitation to eat supper with his friend in Mansfield, and his actual departure from the bar in the direction of Mansfield, are not conclusive as determining Russell's intention. In other words, it is strenuously and ingeniously urged by distinguished counsel for plaintiff that there is no definite and conclusive evidence to show that Russell did not have the actual intention and plan after passing Stonewall of turning off the Mansfield Road at Kickapoo, some several miles further on, proceeding to Logansport, reporting to his employer, turning in the orders that he had procured during the day, picking up his wife and then proceeding in her company to keep his engagement at supper with his friend, Crouch, in Mansfield.
To adopt such a strained and tenuous course of reasoning, based wholly upon supposition and speculation, would be to do violence to every process of logical reasoning. By these steps counsel would persuade the Court to hold that Russell's evidence that he was on his way to Mansfield, Crouch's evidence that Russell had left the bar to go to Mansfield, and the attendant facts and circumstances substantiating this conclusion, should be disregarded. The Court cannot read into the record any circumstance or fact, much less any speculative conclusion which would in effect overthrow uncontroverted testimony and facts in support thereof.
In brief of counsel for this and other plaintiffs in related cases, the following quotation is set forth from a most learned and well-reasoned article by Mr. Hollingsworth B. Barret of the Shreveport Bar, appearing in Volume 14, Tulane Law Review, pages 72-80:
"When an employee starts out with an automobile on a mission for his employer and thereafter departs on a mission of his own, when such employee completes his private purpose and starts back in compliance with his duties, he re-enters the employment at the commencement of the return journey."
Accepting the rule as thus set forth, attention is called to the fact that the re-entry must be taken in connection with a re-entry in compliance with the employer's duties. Now, there can be no dispute of the facts, clearly established by the record, that Russell had completed his duties for the day in the service of his employer when he finished working the town of Waskom, Texas; that he then engaged upon a private mission or a series of private missions, and that no further duty remained for him to discharge in the course and scope of his employment.
Answering this obvious objection to the theory urged on behalf of the plaintiff, great stress is laid upon the proposition that Russell, after leaving Waskom and up to the time of the accident, was in possession of certain orders for merchandise which he had obtained during the day in the territory which he had covered. This point would have greater weight if any reasonable success had attended the effort to show that the delivery of these orders to the employer before turning aside on any private enterprise was either a requirement of the employer or the custom of the employee. Neither of these alternatives has been established, and, on the contrary, the evidence conclusively shows that there was no rule imposed by the employer, that the orders were ofttimes phoned in or delivered to the employer on the morning of the following business day. To hold that an employee continues in the course and scope of his employment after business hours, simply because he holds in his possession undelivered orders for merchandise, would be to extend the doctrine of re-entry to unreasonable lengths.
While it is true that the employee in this case had no fixed hours, it is also true, and is undisputed, that he had completed his services to his employer with regard to calling on prospective customers and selling merchandise at the time of his last call at Waskom, Texas. Undisputed testimony in the record is to the effect that he had no customers in Shreveport or along the Jefferson Highway between Shreveport and Kickapoo, and therefore could not have been engaged in the course of his employment as a salesman for the employer concerned.
The time and the manner of the employee's delivery of sales orders to his employer, according to uncontradicted testimony, was entirely discretionary with the *Page 742 
employee. It is evident that the orders could have been phoned in, or delivered through some other instrumentality if for any reason, or no reason, this particular employee elected not to deliver them in person.
Since the car was personally owned by the employee, he was under no compulsion to return the car to the employer or to any given or fixed destination, which point removes this case from analogy to a number of cases cited by counsel for plaintiffs.
Neither was the employee under any obligation to report for work at a certain time or a certain place, which distinction, in our opinion, renders the doctrine announced in Matheny v. United States Fidelity Guaranty Co., La.App., 181 So. 647, inapplicable. In his opinion in the Matheny case, Judge Taliaferro commented on the necessity of the employee, whose negligence was responsible for the accident, reporting to work at a certain time and a certain place, and returning the automobile of his employer at such a time to such a place.
Reference is made on behalf of plaintiff to Section 3049 of Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., Volume 5, at page 210. Counsel argues, from the converse of the rule stated, that a purpose formed by an employee to return to his employer's duty is not necessarily conclusive; in other words, that the employee's mental attitude is not controlling in a determination of the question as to whether or not he has resumed the employer's business. Certainly this is true, but the question before us in the instant case points the query: To what particular duty or what responsibility, or what obligation of the employer could the employee in this case have contemplated or intended returning when he left Kolb's Bar sometime between 7:00 and 7:30 P.M. on the date of the accident? As we have heretofore observed, there was no duty to which he was returning, and, therefore, any foundation for the speculation that he intended returning to Logansport on business of his employer is unsupported by any showing in the record, or any inferences that might be reasonably drawn therefrom.
In Silent Automatic Sales Corp. v. Stayton, 8 Cir.,45 F.2d 471, the facts were not similar to the facts in the case before us, but in such case it is noted that the charge of the trial Judge to the jury, which was approved by the Appellate Court, emphasized the necessity, in the fixing of liability, for a finding that the employee was at the time of the collision engaged in performing some duty for his employer, which duty was in line of the work entrusted to him.
One of the most comprehensive discussions of problems involved in this case is found in the opinion of Justice Odom in the case of James v. J.S. Williams Sons, Inc., 177 La. 1033,150 So. 9, 11. We quote the following excerpts from Judge Odom's opinion:
"The mere fact that the person to whose negligent and wrongful act the injury and damage is attributable was in the general employment of another person, `does not necessarily make the latter the master, and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct.' * * *
"An employee is the agent or servant of his employer only while engaged in doing for his employer something which he has been directed to do or some act which can be reasonably and fairly said to be a natural incident of the employment, * * * and naturally connected therewith. But when an employee turns entirely and wholly aside from the purposes for which he was employed and engages in some act or enterprise in no way connected with or incidental to his employment, the employer is not responsible for damages caused by the employee while so engaged."
In Braud v. Vinet, La.App., 5 So.2d 200, 203, decided by the First Circuit and cited by counsel for plaintiffs, the opinion, referring to the rule of deviation and the further rule of re-entry, contained the following observations:
"We had these questions for consideration in the recent case of Warnick v. Louisiana Highway Commission, 4 So.2d 607, in which they were treated somewhat at length. We there quoted approvingly from an article published in 14 Tulane Law Review page 72, to the effect that in order for it to appear that a re-entry has taken place, three elements must be present: (1) The trip on which the employee is engaged must have had its origin in the employer's business, (2) The mental purpose of the employee following the deviation must be to return to his next duty whether it be to continue his work or to return the vehicle he is using to the place where it belongs and (3) The purpose to return must have *Page 743 
been put into effect by starting his return journey.
"In the Warnick case we found that all three elements appeared and the employer was held answerable in damages. In the present case however, under the facts presented, it is clear that even though the first of the two elements were present, the third was not."
We quote the above statements with approval, and we find, as the courts in consideration of this question have so often stated, that almost inevitably each case involving this point of deviation and re-entry must turn upon its own peculiar facts.
The facts in the case before us do not justify a finding of re-entry. None of the three elements above set forth have been established with the possible exception of the first requirement. Even to hold that this element was present would be to strain the course of reasoning to the point of holding that the employee's trip was one continuous journey in the course and scope of his employment.
Once the deviation from the course and scope of their employer's business has been established, the burden of proof then shifts, and it becomes the duty of the plaintiff to establish a re-entry upon the employer's business. In this case the deviation has been established beyond question of a doubt but plaintiff has failed to produce evidence which would justify a finding of re-entry.
The Court below held for the defendant. Careful examination of the authorities applicable, and consideration of the facts set forth in the record, convinces us that the judgment was correct.
Accordingly, the judgment of the lower Court is affirmed at appellant's cost.
 On Application for Rehearing.