The FIDELITY & CASUALTY COM-
PANY OF NEW YORK,
Appellant,

v.

Mrs. Claire B. CARPENTER, etc., et al.,
Appellees.

No. 15972.

United States Court of Appeals
Fifth Circuit.

June 8, 1956.

Rehearing Denied July 3, 1956.

Maurice J. Wilson, Baton Rouge, La., Breazeale, Sachse & Wilson, Baton Rouge, La., for appellant.

Ben R. Miller, Baton Rouge, La., Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, La., for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the insurer from a judgment of the trial court based on a jury verdict in an action brought by an injured party directly against the insurer under the Louisiana direct action law. The basis of the appeal is appellant's contention that the real tort feasor, one Hackett, was not an "insured" under the terms of the policy issued to Hackett's employer, Rudolph Ramelli, Inc., and that at the time of the accident Hackett was not acting in the course and scope of his employment and the appellant's named insured, Ramelli, thus had no vicarious liability under the doctrine respondeat superior.

The trial court determined as a matter of law that under the terms of the policy Hackett himself was an insured whose individual tort was insured against by the appellant. The jury found that at the time of the accident Hackett was not acting in the course and scope of his employment.

The principal issue before us is, of course, the construction of the insurance contract to determine whether appellant insured Hackett or only insured Ramelli as to its liability arising vicariously by reason of Hackett's torts while acting within the course and scope of his employment. At the time of this accident, Hackett, who was not an executive of the company, was driving his own automobile for which he received no mileage or other allowance by the company.

In order to determine the question as to whom the appellant insured, we must, of course, look at the part of the policy naming or otherwise defining the "insured," because it is perfectly clear that the company's only liability was "to pay *on behalf of the insured* all sums which *the insured* shall become legally obligated to pay * * *." (Emphasis added.)

The first reference to "insured" is Item 1 of the Declaration where it is stated:

"Item 1. Name of Insured: Rudolph Ramelli, Inc."

If this item stood alone it would, of course, not be possible to contend that anyone other than Ramelli, Inc. was protected by the policy. It does stand alone, so far as definition of, or inclusion of the term "insured" is concerned, except for two subsequent parts of the policy. The first of these is contained in what is called "Insuring Agreements," which is a two-page contract in which "the Fidelity and Casualty Company of New York agrees with *the insured named in the declarations* made a part hereof, in consideration of the payment of the premium, and in reliance upon the statements in the declaration and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"I. Coverage A. Bodily Injury Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"Coverage B. Property Damage Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"II. Defense, Settlement, Supplementary Payments. * * *

"III. Definition of Insured * * *." (This paragraph, which would normally furnish the answer to our problem, is unimportant because it is made inapplicable by a rider attached to the policy.)

Therefore, we turn to this rider, which is the second reference to "insured."

The rider, executed the same day as the main policy, is in form as follows:

"Use of Other Automobiles Limited Form—Individuals, Employees or Partners Comprehensive Automobile—Comprehensive General—Automobile

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Medical Payments with respect to any owned automobile applies with respect to any other automobile, subject to the following provisions:

"1. Definition of Insured. With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes

"(a) Each individual named below and the spouse of such individual if a resident of the same household, and

"(b) any other person or organization legally responsible for the use by such named individual or spouse of an automobile not owned or hired by such other person or organization.

"Insuring Agreement III, Definition of Insured, does not apply to this insurance.

"2. Exclusions. This endorsement does not apply:

"(a) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer;

"(b) if the individual named below is an employee, to the employer of such individual;

"(c) if the individual named below is a partner, to the partnership of which such individual is a member;

"(d) while the automobile is used as a public or livery conveyance;

"(e) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to such named individual or a member of his household other than a private chauffeur or domestic servant of the named individual or spouse;

"(f) to any automobile while used in the business or occupation of the named individual or spouse except a private passenger automobile operated or occupied by such named individual, spouse, chauffeur or servant;

"(g) to any accident arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place;

"(h) with respect to Medical Payments, unless the injury results from the operation of such other automobile by such named individual or spouse or on behalf of either by such chauffeur or servant, or from the occupancy of said automobile by such named individual or spouse.

"3. Other Insurance. The insurance for Bodily Injury Liability and for Property Damage Liability shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered hereunder. The insurance for Medical Payments shall be excess insurance over any other valid and collectible medical payments insurance applicable with respect to the automobile.

"4. The insurance afforded because of naming herein any person is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges for such person.

| Name of Individual employee or partner: | Bodily Injury Liability | Property Damage Liability | Medical Payments |
|---|---|---|---|
| Rudolph Ramelli, President, | 2.27 | .55 | |
| Calvin Doell, Vice President. | 2.27 | .55 | " |

It will be noted that the last sentence in the paragraph numbered 1 above makes the section numbered III of the Insuring Agreement inapplicable. Thus, we have a contract between the Fidelity and Casualty Company of New York as insurer, and Rudolph Ramelli, Inc., as insured, in which for a named consideration the company agreed that Ramelli, Inc., as the named insurer and Rudolph Ramelli, President, and Calvin Doell, Vice President, and their wives, if residents of the household of their respective spouses, would be paid all sums which any of them became legally obligated to pay as damages because of bodily injury or because of property damages caused by accident and arising out of the ownership, maintenance or use of any automobile provided that the company's liability arose with respect to certain named automobiles owned by it and provided that the liability of the individuals was not excluded by the exclusions in 2 above.

The appellant went further, however, and for a premium separately expressed, agreed that Ramelli, Inc. and the individuals named in the rider would be entitled to payment for any liability they suffered from the use by certain named

Class 1 persons and Class 2 employees of "non-owned" automobiles, by which term both parties agree is meant automobiles not owned by the insured, Ramelli, Inc. To accomplish this protection there is a heading on the "Declarations" sheet "Non-Owned automobiles" which, with the appropriate entries, is as follows:

| 3. NON-OWNED AUTOMOBILES | Premium Basis-Class 1 Persons and Class 2 Employees |
| --- | --- |
| Class 1 Persons Name of Each | Location of Head-quarters of Persons Named Herein |
| | See Schedule |

Reference to the "schedule" shows that 20 employees, including Hackett, were listed, and that as to each there was an entry showing an "advance premium," broken down into Bodily Injury Liability and Property Damage Liability. These are elsewhere referred to in the policy as Coverage A and Coverage B respectively. The advance premium shown for Hackett is 3.08 for A and 1.12 for B.

It is the inclusion of Hackett's name on this schedule, headed "Schedule for Non-Ownership Liability" that gives the basis for appellees' contention that he was an "insured" under the policy. This is a contention that, but for the decision of the able trial judge and a decision of the Louisiana Supreme Court would seem to us too tenuous to justify more than casual scrutiny.

It is apparent that the trial court considered the question foreclosed in favor of the plaintiff by the case of Le-Blanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245, 248. We are, of course, bound by the Louisiana law on the subject and must affirm if, as contended by appellee, the LeBlanc case is direct authority for the construction she contends for.

We have concluded, to the contrary, that the LeBlanc opinion does not foreclose the question. The policy there before the court for construction is not the same as that sued on in this case. That policy had a definition of insured clause similar to the clause numbered III in the printed form of this policy. Here, however, as we have noted above, this paragraph III defining insured, was supplanted by the rider which is quoted in full above. No such rider was present in the LeBlanc policy. None of the language construed by the Supreme Court of Louisiana as defining the term "insured" is before us here at all. The only language for us to construe is the item I designation of the named insured and the quoted rider.

Moreover, even if the provisions of paragraph III, Definition of Insured, were still a part of this contract before us, and we were thus bound by its construction by the Louisiana court, this falls far short of supporting the plaintiff's contention that Hackett was an insured in the present policy. The court, in the LeBlanc case, arrived at the conclusion that, because LeBlanc paid part of the premium (a fact not present here) and when he was actually using his automobile "for Cottam & Company's business interests" LeBlanc was personally "protected" by the policy. The court twice stated that the employees using non-owned automobiles were "protected" only "when operating their cars in the business of their employer."

Here the jury expressly found that Hackett was not operating his automobile "while acting in the course and scope of his employment." This makes the LeBlanc decision inapplicable here, because in that case the holding was only

that LeBlanc became an insured when so acting.

Going even so far as it did to "protect" an employee because his name appeared on a schedule of Class 1 persons showing non-ownership liability, the Louisiana Supreme Court arrived at a different conclusion from that of the majority of the courts that have decided this same question. Appellee in its brief says:

"It may well be that counsel for defendant-appellant is correct when he states on Page 26 of his brief:

" 'We have spent many hours in research on this question and have been unable to find where any court, *except the Supreme Court of Louisiana*, has held that a non-ownership endorsement extends the policy coverage to an employee driving his own automobile.' "

Moreover, there are numerous decisions and text writers supporting the view put forward here by the insurer. Fertig v. General Accident Fire & Life Assurance Corporation, Limited, 171 Misc. 921, 13 N.Y.S.2d 872; Miller v. Harleysville Mutual Casualty Co., D.C., 37 F.Supp. 983; Linenshmidt v. Continental Casualty Co., 356 Mo. 914, 204 S. W.2d 295; U. S. Casualty Company v. Godwin, 158 Fla. 64, 27 So.2d 612; Appleman on Insurance Law and Practice, Section 4454, Vol. 7. We have no hesitancy in saying, with full deference to the Supreme Court of Louisiana, that its construction to the effect that even under the given circumstances of acting in the course of his employment the employee not named or referred to anywhere in the policy *as an insured* may nevertheless *become* an *insured* is as liberal a construction of the policy as could be imagined. It certainly does not behoove us in light of the overwhelming weight of judicial authority to expand the construction even further to include such an employee when not in the course of his employment.

█ We hold, therefore, that Hackett was not an insured in the policy in question. This is so from a construction of the language of the policy before us; and it is also so under the holding in the LeBlanc case in view of the jury's finding in answer to a special interrogatory that he was not engaged in his employer's business at the time of the accident.

With respect to this jury finding, the appellee complains that the issue was improperly put and that if we disagree as to the coverage of Hackett, there must be a new trial, whereupon the jury may pass again on the question of scope of employment. The appellee complains of the giving of three charges by the trial court as follows:

4. "You are instructed as a matter of law that the conduct of an employee is within the scope of his employment only when the employee is in a locality not unreasonably distant from the area where he regularly performs his work."

6. "In this case the defendant contends that at the time of the accident involved in this case William H. Hackett was on a personal mission and not for the purpose of rendering any service to Rudolph Ramelli, Inc. I charge you as a matter of law that if you find from the evidence that William H. Hackett's purpose in leaving his sales territory was to borrow money with which to repay personal obligations, the fact that he intended to use some of the borrowed funds to repay Rudolph Ramelli, Inc., the collection money he had allegedly lost or misplaced, would not cause the purpose of the trip to fall within the scope of Hackett's employment and upon such a finding your verdict should be for the defendant."

7. "I charge you as a matter of law that if you consider the initial reason which prompted William H. Hackett to leave his sales territory on the day of this accident was a reason such as would not cause a trip to be in the scope of his employment with Rudolph Ramelli, Inc., you are instructed that the fact that Hackett may have been en route

back to his sales territory when the accident occurred would not cause him to have been in the scope of his employment at that time."

█ We have carefully read this record, and we fail to find any evidence from which a jury could have found that Hackett was, at the time of the injury to plaintiff, within the course of his employment. Hackett did not testify.[1] Ramelli, the president of the employer, testified that he did not know that Hackett was in or near New Orleans; that he had no business there, and that he knew nothing of his whereabouts at the time of the accident. All the jury had before it was the bare fact that Hackett, who worked for Ramelli in a territory 100 miles distant, and who used his own privately owned automobile in his business, had a collision with the plaintiff on the evening of August 3rd while driving with his wife in the car, in a direction which, if pursued far enough, would have taken him to Scott, Louisiana, where he lived, and which was within his territory. Where, as here, a man uses his own privately owned automobile at will for his business, and where he is not paid any allowance for automobile expenses on a mileage or any other basis, it seems clear that much more must be shown by a plaintiff in order to recover against the man's employer than the fact that he is an employee and that he is in an automobile that he uses for his work. Even if the accident had occurred within the salesman's territory on a week-day evening, this would not, of course, be sufficient evidence to warrant submission to the jury the question as to whether he was in the scope of his employment. Obviously, therefore, the fact that Hackett was in his automobile headed towards his territory one evening, and that the next day was a work day, proves nothing in this regard. We think the case of Williamson v. DeSoto Wholesale Grocery Co., Inc., La.App., 16 So.2d 739, is quite apposite here. The Louisiana court there drew the distinction between a case where the employee was using his own car and was a free agent except when actually on the job, as here, and those in which he was using a company vehicle, a circumstance which gave rise to an inference that he was on company business. See also James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9. We have carefully noted the Louisiana cases cited by appellee on this point, particularly Cusimano v. A. S. Spiess Sales Company, 153 La. 551, 98 So. 118; Matheny v. U. S. F. & G. Company, La.App., 181 So. 647; Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607. We think they are all distinguishable on their facts and they are not controlling here. There is no evidence here that anything Hackett did during the entire day of August 3rd had any connection with his business as a salesman for Ramelli. His presence on the road in his own car in company with his wife certainly does not permit the inference that he was then, or had at any time during the day been, doing anything about the business of his employer. There was no burden

---

1. The trial court permitted the appellee's lawyer to read parts of her request for admissions in order to let the jury determine whether there were any admissions by the appellant. Included in these requests were two assertions to the effect that Hackett had voluntarily given statements to agents of appellant. Appellant, in answering the request for admission, admitted that the statements had been made by Hackett but denied the correctness of Hackett's assertion in one of them that he was returning from New Orleans where he "had been on Company business" and the inference that his presence in New Orleans, if he was there, was while engaged on a mission for or acting in behalf of his employer; the statement by Hackett asserting that he had gone there to try to raise some money to pay off a shortage he owed the company.

These statements were not, of course, evidence in and of themselves, since they were strictest hearsay. If such assertions were relevant and true, the only way in which they could be presented to the jury was by Hackett's appearance as a witness or by deposition or interrogatory, unless, of course, the truth of the statements was admitted by the defendant's response, which it was not.

on the defendant even to prove a deviation from his duties, because the plaintiff did not carry the burden of making the prima facie proof of the relationship of master and servant between Hackett and the employer at the time and in respect to the transaction out of which the injury arose. The mere fact that Hackett was a salesman for Ramelli did not, of course, establish such prima facie relationship as to every act of Hackett's, either while at home or abroad.

■ In this state of the record, none of the charges complained of by appellee, could have prejudiced her rights, since under no theory could the jury have found that Hackett was within the scope of his employment.

The trial court having erroneously found that the employee Hackett was insured under the policy, and the judgment having been based solely on that finding, the judgment must be reversed and rendered in favor of appellant.

Reversed and rendered.