GLADNEY, Judge.
This action for death benefits under the Workmen’s Compensation Act was brought by Ruby M. Stubblefield, surviving spouse of Elmer Stubblefield, Jr., on behalf of herself and three children, against-Williams Pressure Service Company and its insurer, Fidelity and Casualty Company of New York. Judgment was rendered by the trial court rejecting plaintiff’s demands on the ground that the accident which caused the death of the employee did not arise out of his employment. From this decree, plaintiff has appealed.
Elmer Stubblefield, Jr. was employed by Williams Pressure Service Company to •perform duties variously described as those ■of a “pumper, switcher and gauger” in •connection with a block of company oil and gas leases on which there were a number of producing wells. He had no fixed hours of employment with the possible exception that he had definite instructions that each morning at or before 7:00 o’clock to gauge the oil level in the tanks provided for each well. In connection with his employment he was furnished with a truck which was replenished with gasoline kept on the company property for that purpose. Stubblefield owned his home located on the north side of the Rodessa-PIosston Road and adjacent to the Williams Pressure Service lease. The Stubblefield home was nearer to Hosston than were the leases, so that in proceeding from Hosston to the leases along the Rodessa-Hosston Road the home is reached before the road leading onto the company leases.
The oil produced upon the lease was sold to the Abney Oil Company, whose truck *585 drivers came in trucks and unloaded the tanks which had been gauged by Stubble-field, whose duty it was to inform each truck driver the location of the tanks where oil was available for unloading. It was the custom for Stubblefield to leave notes for the Abney Oil Company truck drivers in a fruit jar which was kept in a designated place on the Graves unit, at the entrance to the lease. This practice was understood by the Abney Oil Company drivers and upon arriving at the lease they would stop and pick up the note which would direct them to the particular well where they were to secure a load of oil. After unloading the tank the truck driver would make out a run ticket showing the amount of oil which he had picked up. He would then place that run ticket in another fruit jar which was spotted at the well site. Similar jars were left at each well site. If, as it sometimes happened, Stubblefield did not leave a note for the drivers in the jar at the Graves unit, it would be necessary for the latter to get the necessary information personally from him or J. D. Williams, who had charge of company affairs and usually could be located at an office on the lease. Although Stubblefield was not required to be present at the time the tanks were unloaded, he was occasionally there and accepted the run ticket from the truck driver.
On the morning of Sunday, December 24, 1961, Stubblefield had finished gauging the wells. On this particular day J. D. Williams had gone to New Orleans for the Christmas holidays. In gauging the wells the employee had used the pick-up truck for transportation. When he commenced work on that day he had experienced some difficulty in starting the motor of the truck, due to battery malfunction, but did get the truck started by using the battery of his personal automobile. Mrs. Stubblefield returned home from Hosston in the family car, a Ford, after attending church services, which lasted until 11:30, and upon arrival there she found her husband had changed into a fresh set of work clothes, but was still in his stocking feet and was drinking coffee. They conversed a short while before he left in the automobile. During this conversation he complained of battery trouble with the truck and inquired as to the quantity of gasoline in the Ford. She said it was on “empty”. She also told him that she had passed J. C. Middleton, her father, and W. H. Middleton, her brother, on the highway having trouble with their automobile. After Stubblefield departed he either went to the lease where he talked to T. H. Jones, the driver of an Abney Oil Company truck which was being loaded with oil, or he went directly from his home to Hosston. The evidence seems to indicate that he left his home and went direct to Hosston and that his conversation with Jones occurred prior to the return of Mrs. Stubblefield.
Stubblefield entered the Black Bayou Cafe at Hosston, a distance from his home of five miles, about 12:00 o’clock. There he bought a package of cigarettes, found out from the two Middletons that they had fixed their car and were trying to find' some pipe cleaners. Stubblefield told them he had some at his home. He declined to have a cup of coffee with Reverend Garsee, a minister, and went out of the cafe, entered his car and departed in the direction of his home and the company lease. He was following the car of Middletons which left just ahead of him. As he was leaving, Logan, the driver of the second Abney Oil Company truck, drove into Hosston and recognized Stubblefield. His truck followed the same route taken by Stubblefield. The cars and truck proceeded in this order for about three and one-half miles, at which point Stubblefield passed the vehicle ahead of him occupied by his father-in-law and brother-in-law. After returning to the right lane, the car entered a curve and Stubblefield lost control of the vehicle. It collided head-on with the Abney Oil Company truck driven by T. H. Jones, which was returning from the lease with a load of oil. As a result of the collision *586 Stubblefield was killed almost instantly. Time of the accident was fixed at approximately 12:50 P.M.
Counsel for appellant contends that recovery should be allowed and argue principally two points: that the accident arose out of a mission undertaken by Stubblefield in the interest of his employer and, therefore, it arose out of his employment; and that by application of the doctrine of deviation and re-entry the deceased had reentered his employment at the time of the accident. A further contention is grounded upon error charged to the trial court for resting its decision upon the holding in Myers v. Louisiana Railway & Navigation Company, 140 La. 937, 74 So. 256 (1917) rather than applying the tests provided in Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932). Counsel’s argument is based upon an interpretation of the words “merely” and “reasonably”, as used in the Kern case. Counsel argues:
“The basis for the error arises out of (if that phrase may be used) a failure to give proper consideration to' the words ‘merely’ and ‘reasonably’ underscored in the above quotation. Was the employee merely pursuing his own pleasure, and did his employer’s business reasonably require his presence at the time and place of the accident? The Trial Court failed to seek an answer to this essential inquiry. At the time of his death was Stubble-field merely pursuing his own pleasure? Did his employment reasonably require his presence? We feel that this question must be answered affirmatively. Once this is done, Appellant’s entitlement to benefits is established.”
We find the charge of error is without merit and before directing our attention to the other issues in the case we deem it proper to quote from the written reasons for judgment assigned by the trial judge, and which quotation, we think answers the contention of counsel. We are of the opinion the judge correctly interpreted and applied the holdings in Myers and Kern. He commented:
“We think this case can be decided without resort to the deviation and return doctrine, the origin of which is in tort cases involving the liability of an employer for the wrongful acts of his agent. The term in the Compensation Statute, ‘arising out of,’ suggests an inquiry into the character or origin of the risk. If the nature of the employment was such that the risk from which the injury results was greater for the workman than for a person not engaged in the emplojunent, the courts have found that the accident arose out of the employment. Myers v. Louisiana Railway & Navigation Company (1917), 140 La. 937, 74 So. 256.
“In Kern v. Southport Mill (1932), 174 La. 432, 141 So. 19, the Louisiana Supreme Court utilized two criteria to determine whether an accident arose out of the employment: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) Did the necessities of the employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred ?
“In the instant case, Stubblefield was on a public highway, 1.3 miles from his employer’s place of business. His employment did not require him to be in that place. He had been pursuing his own business or convenience.
“Although Stubblefield was granted considerable freedom and latitude of movement in his employment, and although he was returning to his employment to perform some duties of his employment, his employment did not require him to be at the place where the accident happened at the time the accident happened. The risk from *587 which Stubblefield’s death resulted was not greater for him than for any member of the public using the public highways.”
Ernest contention is made by counsel for appellant that the trip of Stubble-field to Hosston arose out of his employment. Unfortunately, for appellant, however, there is nothing to indicate that the interests of the employer were served by Stubblefield while he was on that mission. The evidence tending to show that the company truck was not properly functioning because of battery trouble, that the use of his personal automobile was required in his work, and that it was in need of gasoline, falls short of proof that-the em-' ployee’s trip to Hosston was connected with his employment. Competent testimony disclosed Stubblefield on that trip did not purchase any gasoline in Hosston. Gasoline could have been secured on the lease where it was kept for the use of the truck. Use of the Stubblefield automobile on company business was not authorized. After carefully considering all of the evidence of the record we are unable to conclude with any degree of certainty that the trip to Hosston had any relationship to the business of the employer. Stubblefield’s visit to the Black Bayou Cafe was apparently brief, and from this fact appellant draws the inference that the employee was hurrying to the lease in order to give instructions to Logan as to the identity of the tank from which oil was to be taken. In truth, his purpose and actual destination cannot be known. One must indulge in speculation as to whether he had already left a note for Logan or whether he had not.
In rejecting the contention of appellant that Stubblefield had deviated from his employment, but had re-entered his employment at the time of the accident, the judge a quo found the employee’s trip to Hosston did not have its origin in the employer’s business, although he was of the opinion that the other requirements as set forth below for the application of the doctrine were met in this ease. These were that the employee did form the purpose of returning to the next duty of his employment and that the purpose to return had been put in effect by commencing his return journey. The doctrine of re-entry has been aptly restated by Hollingsworth B. Barret in an article appearing in 14 Tulane Law Review, 72-81, entitled “The Factor of Route in the Doctrine of Re-Entry in Louisiana”, under the present law of Louisiana:
“1. The trip must have had its origin in the employer’s business.
“2. The mental purpose of the employee following departure from employment, must be to return to the next duty, whether that be further work, or the return of the vehicle to the place where it belongs.
“3. The purpose to return must have been put into effect by starting the return journey.”
As above formulated by Barret these elements of the doctrine have been the subject of general approval by the Bar. Warnick, et al. v. Louisiana Highway Commission, La.App., 4 So.2d 607 (1st Cir. 1941); Braud v. Vinet, et al., La.App., 5 So.2d 200 (1st Cir. 1942); Williamson v. De Soto Wholesale Grocery Company, Inc., et al., La.App., 16 So.2d 739 (2d Cir. 1943); Sun Underwriters Insurance Company v. Standard Accident Insurance Company of Detroit, Michigan, et al., La.App., 47 So.2d 133 (Orl. 1950); Rhea v. Farrington, La.App., 78 So.2d 47 (2d Cir. 1955). The doctrine of re-entry or temporary deviation has been accepted by this and other courts of this state to mean, in a matter such as this, that where the employee who is driving the vehicle provided by the employer for the transportation of himself or other employees, departs from his employment and undertakes a mission of his own, such employee re-enters his employment and the scope thereof after he has completed his private mission and has begun to return to *588 his next duty, or, after such completion, has begun to return the vehicle to the place where it belongs. Jagneaux v. Marquette Casualty Company, et al., La.App., 135 So.2d 794 (1st Cir. 1961).
It has been stated that liability in cases of this kind depends not upon the fact of ownership of the car and the general employment of the person who drives it and causes the injury, but upon whether the driver was at the time of the injury in the exercise of the functions for which he was employed, for it is only while in the exercise of those functions that the relationship of master and servant or principal and agent exists. The employee is the agent or the servant of his employer only while engaged in doing for his employer something which he has been directed to do, or some act which can be reasonably and fairly said to be a natural incident of the employment or logically and naturally connected therewith. Generally, of course, the liability of the master for the acts of his servant emanates from LSA-C.C. Art. 2320. It It must appear that the relationship of master and servant exists at the time of the acts which give rise to the liability of the owner for the acts of his servant, and such acts must be done by the servant within the scope of his employment. In the application of these rules our courts have interpreted them so as not to exclude liability where the deviation has been so slight or the proximity to the employee’s work is so close it could be said that the occurrence of such acts are normally authorized or implied by the employer as being within the scope of his duties. However, as it was said in James, et al. v. Williams & Son, Inc., 177 La. 1033, 150 So. 9-13 (1933): To' hold that the owner is liable for the torts of his employee while returning from a mission wholly his own and unauthorized, which mission was without the owner’s knowledge or consent, would be contrary to- the spirit and letter of Article 2320 of the LSA-Civil Code, and would subject owners of motor vehicles to most unjust and dangerous hardships, such as were never contemplated by the framers of the Code.
When Stubblefield departed for Hosston as previously stated, the purpose of the journey was in no wise connected with his employment and this is true whether his trip had its commencement in his home or at his place of work. The interest of his employer did not require him to be at the place of the accident or to be there at that particular time. It was purely a personal mission unauthorized by his employer, and made in his personally owned automobile, the use of which was not authorized by his employer. At the time of the fatal accident the employee had not finished his personal mission. He violated no instruction or direction of his employer in making the trip and in consequence there could have been no deviation and no reentry. The doctrine of re-entry, therefore, is wholly without application because if he did not deviate he cannot be said to have re-entered his employment. Warren v. Globe Indemnity Company, 217 La. 142, 46 So.2d 66 (1950).
Counsel for appellant has cited the cases of Embry v. Reserve Natural Gas Company of Louisiana, 12 La.App. 97, 124 So. 572 (2d Cir. 1929); Matheny v. United States Fidelity & Guaranty Company, et al., La.App., 181 So. 647 (2d Cir. 1938); and Jagneaux v. Marquette Casualty Company, et al., La.App., 135 So.2d 794 (1st Cir. 1961), as disclosing that Stubblefield had re-entered the scope of his employment at the time of the accident. These cases are inapposite under the facts of the instant case. In Embry v. Reserve Natural Gas Company of Louisiana, the employee had taken his employer’s truck from the storage garage and had received instructions from the employer for the day’s work. He made a slight deviation to take a woman to work before going to breakfast and the accident occurred. The court held that such a deviation was impliedly authorized and the truck driver was held to have been acting within the scope of his authority. In *589 Matheny v. United States Fidelity & Guaranty Company the servant had completed his personal mission, for which he had turned aside, and was returning to resume his duties. The court held that it was not essential for the servant to have reached the zone of his employment or the territory in which he was employed. In Jagneaux v. Marquette Casualty Company, the employee was being transferred home from work as a passenger in a truck furnished by his employer for such purpose. The driver of the truck deviated from the direct route on a private mission of his own when the truck collided with a train. The court held that the deviation was not initiated by the passenger and was not for his benefit and he had no control of the operation of the truck, nor the determination of the route to be taken, hence recovery was allowed. In all of these cases the origin of the journey was within the scope of the employment. The distinction between these authorities and the instant case is, therefore, apparent.
For the foregoing reasons, the judgment from which plaintiff has appealed, will be affirmed at appellant’s cost.